**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA A. PIPER, | : | CIVIL NO.: 1:25-cv-01605 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I. Introduction.

In this social security action, Plaintiff Lisa A. Piper ("Piper") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 11-1* to 11-*13*.[1] On January 7, 2020, Piper protectively filed[2] an application for supplemental security income, alleging that she has been disabled since June 1, 2014. *See Admin. Tr.* at 190–99, 1090. After her claims were denied at the initial and reconsideration levels of administrative review (*id.* at 113–25), Piper requested an administrative hearing (*id.* at 128–31). On April 13, 2022, Piper—who was represented by an attorney—as well as a vocational expert testified at a hearing before Administrative Law Judge William C. Zuber (the "ALJ"). *Id.* at 45–38. On June 2, 2022, the ALJ denied Piper's claim for benefits. *Id.* at 15–39. Piper appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1–14. Piper subsequently filed a civil action in the United States District Court for the Middle District of Pennsylvania. *Id.* at 947–49. By the parties' consent, Judge Bloom issued an order on November 28, 2023, remanding the case back to the Commissioner. *Id.* at 955–61. The Appeals Council vacated

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Piper's claims.

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

the final decision of the Commissioner and remanded the case to an ALJ for further proceedings. *Id.* at 964–69. On May 20, 2024, Piper and a vocational expert testified at a hearing before the same ALJ, William C. Zuber. *Id.* at 876–98. The ALJ issued another unfavorable decision on July 26, 2024. *Id.* at 840–62. This makes the ALJ's July 2024 decision the final decision of the Commissioner subject to judicial review by this court.

In August 2025, Piper, through counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1*. She requests that the court find that she is entitled to benefits under the provisions of the Social Security Act or remand this case for another hearing. *Id.* ¶¶ 1–2. She also seeks a judgment for "further relief" as the court deems just and proper, including attorney's fees. *Id.* ¶¶ 3–4.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10*. The Commissioner filed a certified transcript of the administrative proceedings. *Doc. 11*. The parties filed briefs (*see docs. 17, 19–20*) and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Piper is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for

supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the

claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On July 26, 2024, the ALJ denied Piper's claim for benefits. *Admin. Tr.* at 840–62. He proceeded through the five-step sequential-evaluation process.

**A. Step One.**

At step one of the sequential-evaluation process, the ALJ found that Piper had not engaged in substantial gainful activity since January 7, 2020, the date she filed her application for benefits. *Id.* at 846.[3]

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Piper had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the shoulders, patellofemoral pain syndrome of the right knee, diabetes mellitus, asthma, anxiety, depression, posttraumatic stress disorder (PTSD), and schizotypical personality disorder. *Id.*

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Piper did not have an impairment or combination of impairments that met or medically

[3] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 846–50. Specifically, the ALJ considered Listings 1.15, 1.16, 1.18, 3.03, and 9.00, and he determined that Piper's physical impairments did not meet or medically equal these listings. *Id.* at 847–48.

As to Piper's mental impairments, the ALJ considered Listings 12.03, 12.04, 12.06, 12.08, and 12.15. *Id.* at 848. In doing so, he considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[4] and in the listings, known as the paragraph B criteria.[5] *Id.* at 848–50.

---

[4] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F.R. § 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* § 416.920a(d).

[5] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2. Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F.R. § 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F. This is what the ALJ is referring to when he refers to the paragraph B criteria.

The ALJ determined that Piper had a moderate limitation in each area of functioning. *Id.* The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." *Id.* at 850. And he asserted that the RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id.* The ALJ also determined that Piper did not satisfy the paragraph C criteria. *Id.*

**D. The RFC.**

The ALJ then determined that Piper had the RFC to do light work[6] with some limitations:

> [Piper] can engage in simple, routine, repetitive tasks, requiring little independent judgement; no overhead reaching with the upper extremities, occasional climbing of ramps or stairs;

---

[6] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

> occasionally kneel, crouch, or crawl; frequently balance or stoop; no climbing of ladders, ropes, or scaffolds; frequent exposure to extremes of temperature, wetness, humidity, vibration, and dangerous machinery or unprotected heights; occasional exposure to dust/fumes/gases/odors; occasional interactions with coworkers, supervisors, and the general public; occasional changes in a work routine and environment; and can sustain concentration, persistence, and pace for periods of two hours of time.

*Id.* In making this RFC assessment, the ALJ considered Piper's testimony and assertions regarding her limitations, Piper's medical records, her activities of daily living, the medical opinions in the record, and statements provided by David Mattingly. *Id*. at 850–60.

In assessing Piper's medical records, the ALJ reviewed the consultative psychological examination notes completed by Dr. Greg Lynch. *Id.* at 853. He also reviewed the consultative medical examination notes completed by Dr. Kay Corpus. *Id.* at 853–54. The ALJ further recognized that Piper was prescribed the use of a cane. *Id.* at 854. Ultimately, the ALJ concluded that a cane is not medically necessary for Piper to ambulate, and he excluded a cane provision in the RFC. *Id.* at 858. Regarding Piper's cane, the ALJ considered treatment records from a visit with nurse Dowell. *Id.* at 854. Nurse Dowell reported that Piper was ambulating normally and that her gait and station were normal. *Id.* The ALJ recognized that Piper was prescribed a cane only because Piper requested one, and not because it was determined to be medically required. *Id.* at 854, 858.

As to the medical opinions, the ALJ considered the opinion of Dr. Lynch:

> In June 2020, [Piper's] consultative psychological examiner opined that [Piper's] capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks seemed affected by impairment with slight limitations noted; her ability to tolerate stress and pressure of day-to-day employment seemed affected by impairment with moderate limitations noted; her capacity to sustain attention and concentration toward the performance of simple, repetitive tasks seemed affected by impairment with slight limitations noted; and her capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting seemed affected by impairment with moderate to marked limitations noted.

*Id.* at 859. The ALJ found the opinion unpersuasive to the extent it assigned a moderate to marked limitation to Piper's capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting unpersuasive. *Id.* The ALJ reasoned that the opinion is not supported by Dr. Lynch's own examination findings and is not consistent with the longitudinal medical evidence:

> At the claimant's psychological consultative examination, [Piper's] attention and concentration seemed normal, her memory function seemed normal, her thought organization seemed goal oriented, she had normal abstracting abilities and the claimant's intellectual functioning was estimated to fall in the average range. The psychological consultative examiner's own findings do not support the claimant having any more than a moderate limitation in any of the four areas of broad mental functioning. Further, the record does not reflect [Piper] requiring any psychiatric hospitalizations or inpatient mental health treatment during the period under adjudication. Overall, the record reflects only sporadic specialized mental health treatment. [Piper] was previously treated with her primary care provider for her mental conditions and was prescribed

> medication. She has also had some sporadic counseling and psychiatric treatment. Her counseling was rather limited, beginning in May 2020 and only lasting approximately six months. She briefly returned to counseling a year later in November 2021, where she was diagnosed with depression, anxiety, and panic disorder, but she did not return after the initial visit. These notes fail to show any significant abnormalities or acute symptoms. Further, [Piper's] psychotherapy treatment notes overwhelmingly reflect her having intact functional status. When seen for psychotherapy appointments in August 2022, [Piper] indicated that Vraylar had helped stop disturbing auditory hallucinations and she reported her anxiety was well-managed. According to [Piper's] function reports, she washed dishes, helped care for her boyfriend, did cooking and laundry for her boyfriend (with help carrying the basket). She stated she fed her pet cats. She indicated she shopped in stores for food two to three times per month, and she went to doctor's appointments. [Piper] noted she was on Facebook to socialize, which she did daily. She admitted she was able to pay bills, count change, handle a savings account, and use a checkbook/money orders. She acknowledged she adequately followed written instructions. She said she got along fine with authority figures. The longitudinal evidence of record does not support [Piper] having any more than a moderate limitation in any of the four areas of broad mental functioning.

*Id.*

The ALJ also considered the opinions of Dr. Corpus, who opined that Piper had "a potential inability to do basic work activities such as standing, lifting, carrying, avoiding ordinary hazards in the workplace or home[,] and traveling" and "could walk about 50 feet without an assistive device and stand for about 10 minutes." *Id.* at 860. The ALJ found these opinions not persuasive because they are speculative and vague:

> [T]he examiner notes [Piper] has the "potential inability" to engage in activities, but does not state whether [Piper] actually ha[s] the inability to engage in these activities. Further, they do not indicate the frequency [Piper] can engage in activities, specify the amount of weight [Piper] could lift or carry, and their opinion is not in terms of the most[] [Piper] can do despite her limitations. Moreover, these opinions, particularly the walking and standing limitations, are inconsistent with their examination notes of [Piper] that showed 5/5 bilateral upper and lower extremity strength, 5/5 bilateral grip strength, normal coordination, able to ambulate without an assistive device, and unremarkable chest and pulmonary examinations. Further, examination notes of nurse Dowell reflect [Piper] ambulating normally with a normal gait and station and generally do not reflect [Piper] having any significant strength deficits. Additionally, although [Piper] has received some orthopedic treatment since the alleged onset date, the record reflects minimal specialized orthopedic treatment in 2021 or 2022. Moreover, a recent MRI of [Piper's] right knee was essentially negative.

*Id*. The ALJ concluded that the RFC was supported by the longitudinal evidence of record and that Piper's severe impairments were accounted for by providing physical and mental limitations. *Id.*

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Piper had no past relevant work. *Id*.

### F. Step Five.

At step five of the sequential-evaluation process, considering Piper's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as final inspector, office helper, and assembler of small products—that exist in significant numbers in the national economy that Piper could perform. *Id*. at 861.

In sum, the ALJ concluded that Piper has not been disabled since January 7, 2020, the date she filed her application. *Id*. at 862. Thus, he denied Piper's claim for benefits. *Id*.

## V. Discussion.

Piper presents two claims: (1) the ALJ improperly evaluated the opinions of the consultative examiners; and (2) the ALJ's finding that she did not medically require a cane to ambulate was not supported by substantial evidence. *Doc. 17* at 1. Because these claims involve the ALJ's RFC assessment and opinion testimony, before addressing the merits of those claims, we set forth general standards regarding the RFC assessment and the evaluation of opinion testimony.

### A. The RFC.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the

ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

**B. Opinion Testimony.**

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). As the regulations provide, supportability means: "The more relevant

the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022). On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

**C. The ALJ's evaluation of the opinion evidence is supported by substantial evidence.**

Piper contends that the ALJ erred in evaluating the opinions of the consultative examiners, Dr. Corpus and Dr. Lynch. Specifically, she argues that the ALJ erred in addressing the supportability and consistency of the opinions. We

conclude that the ALJ sufficiently articulated why he found Dr. Corpus's opinion not persuasive and Dr. Lynch's opinion only partially persuasive.

At the outset, we agree with the Commissioner that the ALJ's decision must be read as a whole, he need not use particular language, and he may weave his discussion of the supportability and consistency factors throughout his discussion of the opinion evidence. *See Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (concluding that to satisfy the requirement of articulating how she analyzed the supportability and consistency factors, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor[,]" and the ALJ adequately articulated her decision where she "weave[d] supportability and consistency throughout her analysis of which doctors were persuasive"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (reading the ALJ's decision as whole and concluding that the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis").

Piper claims that the ALJ failed to address the supporting explanations that Dr. Corpus and Dr. Lynch set forth in their examinations. *Doc. 17* at 10–12. But prior to assessing the persuasiveness of the opinions, the ALJ dedicated an entire page to reviewing the examination notes of Dr. Corpus and Dr. Lynch. *Admin. Tr.* at 853–54. The ALJ addressed Dr. Corpus's observations that Piper contends were

omitted, including an antalgic gait and diagnosis of right knee pain.[7] *Id.* Similarly, the ALJ recited Dr. Lynch's observations that Piper's "overall motor activity seemed slowed," she "had some inconsistent insight into her own psychological functioning," she "was tearful throughout the evaluation," and she "endorsed behavioral inertia and frequent episodes of mind blanking, as well as, intrusive flashback memories related to her abuse history." *Id.* at 853.

The ALJ proceeded to find Dr. Corpus's opinions unpersuasive. *Id.* at 860. The ALJ assessed the supportability of the opinions noting the examination notes "showed 5/5 bilateral upper and lower extremity strength, 5/5 bilateral grip strength, normal coordination, able to ambulate without an assistive device, and unremarkable chest and pulmonary examinations." *Id.* The ALJ further found Dr. Lynch's opinion unpersuasive to the extent that it found Piper had a moderate to

---

[7] Piper contends that the ALJ omitted Dr. Lynch's observation of grinding of the right knee when it bends and straightens. *Doc. 17* at 10. While the ALJ does not specifically address Piper's grinding of her right knee, an ALJ is not required to discuss every record in evidence. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record"); *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 162 (3d Cir. 2016) ("[C]herry-picking of unmentioned details from a voluminous record does not a viable claim make."); *Freeman v. Colvin*, No. 4:14-CV-01581, 2015 WL 3739077, at *7 (M.D. Pa. June 15, 2015) ("It is well established that the ALJ need not address every piece of evidence in the record."). And given that the ALJ noted Dr. Corpus's observation of a right knee brace and diagnosis of right knee pain, the failure of the ALJ to specifically address the grinding of the right knee is unremarkable.

marked limitation in responding "appropriately to supervision, co-workers, and work pressures in a work setting." *Id.* at 859. The ALJ reasoned that Dr. Lynch's own findings "do not support more than a moderate limitation in any of four areas of broad mental functioning." *Id.* He explained that Dr. Lynch observed that Piper's "attention and concentration seemed normal, her memory function seemed normal, her thought organization seemed goal oriented, she had normal abstracting abilities[,] and [her] intellectual functioning was estimated to fall in the average range." *Id.*

Because the ALJ fully addressed the consultative examiners' explanations for their opinions, he has adequately explained his conclusion regarding the supportability of their opinions. Accordingly, we find that the ALJ's supportability evaluation was based on substantial evidence. *Marzolf v. O'malley*, No. 1:25-CV-00047, 2026 WL 1196101, at *3 (M.D. Pa. Jan. 2, 2026), *report and recommendation adopted sub nom. Marzolf v. Bisignano*, No. 1:25-CV-47, 2026 WL 737491 (M.D. Pa. Mar. 16, 2026) (finding the ALJ's supportability analysis was sufficient where the ALJ discussed the physician's supporting explanations prior to evaluating the opinion)

Piper further argues that the ALJ's consistency analysis is flawed. Her main complaint is that the ALJ failed to adequately explain why he found the consultative examiners' opinions not consistent with the other evidence in the

record.[8] Specifically, she claims that the ALJ ignored findings of an antalgic gait and overlooked numerous descriptions of her anxiety. *Doc. 17* at 10, 12. But the ALJ did discuss such treatment records earlier in his decision. *Admin. Tr.* at 852. And the ALJ did cite to the record when assessing the consistency of the opinion evidence. *Id.* at 859–60; *see also Minarsky v. Kijakazi*, 747 F. Supp. 3d 801, 814 (M.D. Pa. 2024) (finding the ALJ's consistency analysis was supported by substantial evidence because he included citations to the record).

Regarding the consistency of Dr. Corpus's opinion, the ALJ explained that the opinion was inconsistent with the examination notes of nurse Dowell, which reflect normal ambulation, normal gait, and no significant strength deficits. *Id.* at 860. The ALJ further noted that "although [Piper] has received some orthopedic treatment since the alleged onset date, the record reflects minimal specialized orthopedic treatment in 2021 or 2022" and that "a recent MRI of [Piper's] right knee was essentially negative." *Id.*

---

[8] Regarding Dr. Lynch's opinion, Piper notes that the ALJ cites activities of daily living, including cat ownership, cooking for her boyfriend, and shopping in stores two to three times per month as sources of inconsistency. *Doc. 17* at 12. Piper argues that the ALJ fails to explain how these specific daily activities are inconsistent with a limitation in responding appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* However, Piper fails to acknowledge that the ALJ cited numerous activities of daily living as inconsistent with a finding that Piper has "any more than a moderate limitation in *any* of the four areas of broad mental functioning." *Admin. Tr.* at 859 (emphasis added).

As to the consistency of Dr. Lynch's opinion, the ALJ explained that the opinion was inconsistent with the longitudinal medical evidence, which "does not reflect [Piper] requiring any psychiatric hospitalizations or inpatient mental health treatment during the period under adjudication." *Id.* at 859. The ALJ also reasoned that the record reflects only "sporadic specialized mental health treatment," including inconsistent counseling sessions that failed to show "any significant abnormalities or acute symptoms." *Id.* The ALJ noted that Piper's psychotherapy treatment notes "overwhelmingly reflect her having intact functional status" and that Piper reported her medication "helped stop disturbing auditory hallucinations" and that "her anxiety was well-managed." *Id.* The ALJ also reasoned that Dr. Lynch's opinion was inconsistent with Piper's function reports, which reported that she washed dishes, helped care for her boyfriend, did cooking and laundry for her boyfriend (with help carrying the basket), fed her pet cats, shopped in stores two to three times per month, went to doctor's appointments, was on Facebook daily to socialize, was able to pay bills, count change, handle a savings account, used a checkbook/money orders, acknowledged she adequately followed written instructions, and acknowledged she got along fine with authority figures. *Id.*

Moreover, while Piper contends that there is objective evidence that supports the consultative examiners' findings—and this may be so—to the extent she is suggesting that the court accept her analysis of the evidence over the analysis set

forth by the ALJ, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)). And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). Here, the ALJ fulfilled his duty in evaluating the evidence and explaining why he chose to credit some evidence over other evidence.

In sum, when read as a whole, the ALJ adequately explained why he found Dr. Corpus's opinions unpersuasive and Dr. Lynch's opinion only partially persuasive, and the ALJ's decision is supported by substantial evidence.

**D. The ALJ did not err in deciding that a prescription for a new cane is not equivalent to a medical necessity.**

Piper further argues that the ALJ's evaluation of her need for a cane is not supported by substantial evidence. She claims the ALJ's finding that a cane is not medically necessary rests on a "selective reading of the evidence." *Doc. 17* at 14. Piper further argues that the ALJ failed to address whether a cane was medically

necessary for balance. *Id.* at 15. We conclude that the ALJ did not err and that his decision is supported by substantial evidence.

The ALJ determined that Piper's cane was not medically required for her to ambulate. *Admin. Tr.* at 858. The ALJ reasoned that "nurse Dowell prescribed the claimant the use of the cane upon [Piper's] request [to help with mobility], but . . . nurse Dowell's treatment notes indicate [Piper] having a normal gait and station and do not support the use of a cane being a medical necessity." *Id.* Accordingly, the ALJ found that a cane was prescribed to Piper only because she asked for it, and not because nurse Dowell determined it was medically required.

Piper points to SSR 96-9p, which addresses hand-held assistive devices regarding a claimant's RFC assessment. SSR 96-9p states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . .

SSR 96-9P, 1996 WL 374185, at *7.

Piper failed to provide medical documentation that her cane was medically required for her to ambulate. Piper provided evidence that her cane was prescribed, but a prescription does not indicate a medical necessity. *See Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (noting that a prescription for a cane is "insufficient to support a finding that a cane was medically necessary."); *see also Ernest v. Bisignano*, No. 4:24-cv-00669, 2026 WL 900517, at *4 (M.D.

Pa. Mar. 30, 2026) ("Even a prescription must be tailored to the need of a claimant and explain the assistive device's medical necessity in sufficient detail."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 2:16-cv-02807, 2017 WL 935442 at *7 (D.N.J. Mar. 9, 2017) ("[A] prescription for a cane is not enough to demonstrate that the cane is medically necessary.").

Piper also points to medical evidence establishing an antalgic gait and treatment for right knee dysfunction. *Doc. 17* at 14 (citing *Admin. Tr.* at 311–13, 356, 437, 439, 598, 830, 1213). But such evidence, without more, does not establish medical necessity. *See Antonio R. v. Comm'r of Soc. Sec.*, No. 25-CV-01980, 2026 WL 810050, at *11 (D.N.J. Mar. 24, 2026) (noting that "multiple examinations noted normal or non-antalgic gait without use of an assistive device," which is not sufficient to establish medical necessity); *Caridad H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-893, 2019 WL 3253228, at *6 (N.D.N.Y. July 19, 2019) ("A physician's observation that a patient used a cane or had an unsteady gait does not satisfy" the burden of establishing medical necessity.). Indeed, the evidence cited by Piper—except for the prescription—makes no mention of a cane, let alone a "discussion of its medical necessity." *Howze*, 53 F. App'x at 222. And to the extent that Piper argues that "the ALJ's determination that a cane was not medically necessary for *mobility* elides the evidence of the effects of requiring a cane for *balance*[,]" (*doc. 17* at 15), "there was no requirement for the ALJ to

differentiate amongst those abilities because there was no evidence a cane was medically required for balancing, walking, or standing." *Brooks v. Saul*, No. CV 19-2855, 2019 WL 7048794, at *6 n.5 (E.D. Pa. Dec. 23, 2019).

Therefore, the ALJ's decision to not include the cane into Piper's RFC assessment was based on substantial evidence. *See Faith S. v. Bisignano*, No. 1:24-cv-00989, 2026 WL 821832, at *8–9 (M.D. Pa. Mar. 25, 2026) (finding that the ALJ properly excluded a cane from the claimant's RFC assessment because the cane was not medically necessary.); *see also Soto v. Comm'r of Soc. Sec.*, No. 17-cv-89, 2018 WL 355138 at *5 (D.N.J. Jan. 10, 2018) (finding that the ALJ relied on substantial evidence when the claimant failed to demonstrate a cane was medically required, thereby leading to its exclusion in the RFC assessment).

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge